# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MICHELE CATHERINE CREASY,

       **Plaintiff,**

-vs-                                     **Case No.  6:13-cv-400-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for further consideration.

## Procedural History

Plaintiff protectively filed her application on September 18, 2009, alleging disability as of June 1, 2009 (R. 141-55, 184).  The onset date was later amended to March 1, 2010 (R. 23, 168).  Her application was denied initially and on reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ").  On August 5, 2011, the ALJ issued a decision denying Plaintiff's applications (R. 20-37).  The Appeals Council denied Plaintiff's Request for Review (R. 1-5), making the ALJ's decision the final decision of the Commissioner.  This action followed, and the parties consented to the jurisdiction of the United States Magistrate Judge.  The matter is now ripe for review under 42 U.S.C. §§  405(g) and 1383(c)(3).

## Summary of Evidence Before the ALJ

Plaintiff was 38 years of age as of the ALJ's decision (R. 44), with a high school education and one year of college (R. 44, 215) and past relevant work as a teacher, receptionist, medical secretary, administrative clerk, and sales clerk (R. 30, 64-65, 173-78, 187-99, 207).  She claimed to be disabled due to "75 percent muscle loss and nerve damage to both arms" with resulting pain, numbness and limitation (R. 206).

Plaintiff's date last insured for disability insurance benefits was September 30, 2010 (R. 23). Thus, the pertinent time period at issue for this application[1] is the onset date of March 1, 2010 through the date last insured.

In the interest of privacy and brevity, the evidence set forth in the ALJ's decision will not be repeated here, except as necessary to address Plaintiff's objections.  In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff and her husband, and opinions from examining and non-examining consultants.  By way of summary, the ALJ determined that Plaintiff has medically determinable impairments of bilateral deltoid muscle loss with carpal tunnel syndrome and neuropathy, and migraine headaches (R. 25) but found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 27).  The ALJ made a specific finding that Plaintiff's "medically determinable mental impairments of adjustment disorder with depressed mood and mixed anxiety, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere." (R. 25-26).[2]

The ALJ then determined that Plaintiff had the residual functional capacity ("RFC"):

---

[1]As noted, Plaintiff also applied for Supplemental Security Income.

[2]Plaintiff does not challenge this finding in this appeal.

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; cannot work in hazardous environments; cannot do tasks requiring overhead reaching and can use the hands and arms for frequent (not constant) grasping activities.

(R. 27).

The ALJ determined that claimant was capable of performing her past relevant work as a teacher, receptionist, secretary, administrative clerk, and sales clerk, and was therefore not under a disability at any time from the alleged onset date through the date of the decision (R. 30-31).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that the ALJ erred in that:  1) he failed to consider all of the evidence of record; 2) he failed to properly consider the statements and opinions of the long time treating pain specialist; and 3) he failed to properly consider Plaintiff's testimony as to the limitations suffered as a result of her medical conditions.

### The five step assessment

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  Here, the burden remained with Plaintiff at all times, as the ALJ concluded her findings by determining  that Plaintiff could return to her past relevant work at Step 4 of the evaluation.

### Formulating the RFC

Title 20 C.F.R. §404.1545(a)(3) requires the ALJ to consider all medical evidence when formulating a residual functional capacity. The ALJ has a duty to make clear the weight accorded to

each item of evidence and the reasons for his decision in order to enable a reviewing court to

determine whether the decision was based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d

731, 735 (11th Cir. 1981).  However, "there is no rigid requirement that the ALJ specifically refer to

every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which

is 'not enough to enable this Court to conclude that the ALJ considered [the claimant's] medical

conditions as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (*quoting Foote v.*

*Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).  The Court cannot make such a finding here.

According to the administrative record, Plaintiff began seeing specialist Paul Webster, M.D.,

in September 2009, for pain management (R. 400-01).  As the Commissioner acknowledges in his

brief, Plaintiff saw Dr. Webster on about twelve occasions from 2009 through 2010, including visits

on April 8, 2010, June 28, 2010, September, 27, 2010, and December 6, 2010 (R. 398, 400-01, 458,

471, 473, 501, 503, 505, 507, 509, 511, 514).  In the administrative decision, however, the ALJ

referenced only earlier treatment notes, stating:

> However, by March 2010, Dr. Webster reported a decreased range of motion in both
> upper arms at the shoulders with problems reaching overhead. The claimant held her
> arms while walking and sitting. However, she otherwise had no gross motor deficits
> and her muscle bulk and tone were normal. It was also noted that she had possible
> decreased grip strength on both sides, but pain interfered with an examination of her
> triceps and biceps. (Exhibit 16F) . . . **It is unclear if the claimant saw Dr. Webster**
> **since March 2010, as there are no treatment notes after this date**. However, as
> discussed below, Dr. Webster prepared a treating physician questionnaire in April
> 2011. (Exhibit 21F). The claimant noted that she does not currently have health
> insurance and has not treated with any doctors, aside from Dr. Webster, regularly in
> the last year.

(R. 29) (emphasis added).

As the record includes Dr. Webster's treatment notes after March 2010, the ALJ's statement

to the contrary is plainly incorrect.  While acknowledging that the ALJ's statement was "erroneous,"

the Commissioner nonetheless contends that such error was harmless as "the ALJ likely reviewed the

records (although not recognizing their date) because he cites to Exhibit 20F twice in his decision (R.

28, 29)," and "the treatment notes since March 2010 (R. 501, 503, 505, 507) are substantially similar to the March 2010 treatments notes (R. 471, 473), with only a few changes in physical examination findings."

The Court does not find it "likely" that the ALJ reviewed records that he stated did not exist. Similarly, the Court cannot substitute the conclusions of counsel for findings of the ALJ. *See, e.g., Gunn v. Astrue,* No. 1:06-cv-00205-MP-WCS, 2008 WL 216403,*12 (N.D. Fla. Jan. 23, 2008) ("When this court judicially reviews an administrative action of an agency of the executive branch, it may not substitute counsel's post hoc rationale for the reasoning supplied by the agency itself.") It is not for this Court to determine whether the physical examination findings in the latter medical records are "substantially similar" to earlier treatment notes; nor to weigh the significance of any change in Plaintiff's condition. Such fact-finding is expressly reserved for the ALJ in the first instance.

As the ALJ must consider all of the medical evidence in formulating the RFC and there is reason to believe that he did not do so here, remand is appropriate. Moreover, even if the regulations did not compel remand, the Court cannot find that the failure to consider the latter medical records was harmless as the ALJ was required to consider the notes as opinion evidence and the ALJ could not properly evaluate Dr. Webster's formal opinion without reviewing all of his treatment notes.

**Evaluating the opinion of a Treating Physician**

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, *including symptoms, diagnosis, and prognosis*, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social*

*Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

As noted by Plaintiff in her brief, the  treatment notes for the four visits after March 2010 indicate clinical examination findings of recurrent pain despite prescriptions for narcotic medication, decreased grip strength, dimpling in both arms, tenderness with decreased range of motion in both arms, and an antalgic posture with the claimant holding the arms while trying to ambulate (Doc. 501-508). Her prescriptions were changed to accommodate reportedly worsening symptoms. *Id.*  As these notes reflect symptoms, diagnosis and, to a limited extent, prognosis, they are "opinions" under *Winschel,* and, as such, the ALJ is required to fully evaluate them.  The failure to consider these records is, therefore, error under *Winschel.*

Moreover, as noted, Dr. Webster was Plaintiff's treating physician.  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, *supra; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments **is well-supported** by medically acceptable clinical and laboratory diagnostic techniques, and is **not inconsistent with the other substantial evidence** in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2) (emphasis supplied).  As such, an ALJ cannot evaluate whether an opinion is "well supported" and consistent with other evidence, without reviewing all of the evidence, including the physician's own treatment records.

Here, in addition to the treatment records (which are themselves "opinions" under *Winschel*), Dr. Webster provided an explicit opinion explaining Plaintiff's diagnosis and condition, and noting that Plaintiff had not received any improvement despite treatment; had decreased concentration and sleepiness or malaise as side effects from the prescribed medication; had interruption of sleep due to the circumstances of her conditions; and had complaints of daily fatigue and general malaise

consistent with a systemic response to the chronic pain, the side effects of the prescribed medication, and interrupted nightly sleep patterns (R. 519-520).  Dr. Webster opined that Plaintiff is "unable to work full days at even sedentary types of work activity" (R 520).   The ALJ acknowledged this opinion, but discounted it, as follows:

> As for the opinion evidence, the undersigned gives limited weight to Dr. Webster (Exhibit 21F) as many points are on issues reserved the Commissioner of the Social Security Administration. 20 CFR 404.1527 and 416.927. **Moreover, Dr. Webster's statements are a recitation of the complaints and there is no discussion showing that those complaints are consistent with the medical history**. Dr. Webster has been Ms. Creasy's treating physician for almost two years, and in weighing his opinion the undersigned has been mindful that he is a specialist in pain management (20 CFR 404. 1527(d) and 416.927(d)). Dr. Webster indicated in April 2011, that the claimant has neurological deficits and chronic pain. **However, according to Dr. Webster's treatment notes, the claimant had relatively normal physical examinations except for a decreased range of motion in both arms at the shoulder and in reaching above the head with decreased sensation in the arms and a possibility of decreased grip strength**. Moreover, Dr. Webster's remarks regarding anxiety and depression must be viewed within the context of his actual treatment notes, which affirmatively state that there is no memory loss and show normal mood and affect as well as normal speech. Although, Dr. Webster noted that the claimant had a dysthymic mood and full but blunted affect during two visits in 201 0, these problems are not associated with significant functional limitations. (Exhibit 16F). For the foregoing reasons, the undersigned finds that Dr. Webster's conclusions are not well supported and are contradicted by substantial evidence, **including his own examination findings** and the claimant's description of her activities.

(R. 29-30 emphasis added).

Part of the reason offered by the ALJ for discounting the opinion of the treating specialist is an alleged inconsistency with the doctor's own examination findings and an absence of a showing that the complaints are "consistent with her medical history."  By failing to consider all of the treatment notes, however, the ALJ was not aware of *all* of the medical history and therefore could not possibly evaluate whether this opinion was consistent with it. Under these circumstances, a finding that the opinion is inconsistent with Dr. Webster's examination findings or Plaintiff's medical history is not supported by substantial evidence.  Remand for further consideration of all of the medical evidence, and a re-weighing of the opinion in light of the complete record, is required.

-8-

In recommending that the case be remanded for additional consideration of the evidence, the Court does not imply that reconsideration will lead to a different ultimate result. Rather, the Court recognizes that its task is not to weigh the evidence in the first place, but to evaluate whether the decision is properly supported and was reached by application of the correct standards. As the instant evaluation of the evidence does not comport with that standard, remand is necessary. [3]

## Conclusion

As set forth above, the administrative decision is not supported by substantial evidence and is not in accordance with proper legal standards. As such, the decision is **REVERSED and the matter is REMANDED** to the Commissioner for additional proceedings not inconsistent with this opinion. The Clerk is directed to enter judgment for Plaintiff, under sentence four of 42 U.S.C. § 405(g), and close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 7, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[3]Plaintiff also objects to the evaluation of her complaints of pain and limitations. As remand is necessary to consider the medical evidence, the ALJ should look anew at Plaintiff's allegations, including the alleged side effects of her medications, in formulating the RFC on a complete record.